A89A0120. DALLAS BUILDING MATERIAL, INC. v. ROSE et al.
(383 SE2d 151)

BANKE, Presiding Judge.

The appellant, Dallas Building Material, Inc., regularly furnished building materials to Ed Jordan, a general contractor, for use in constructing homes. During the summer of 1985, Jordan experienced financial difficulties while engaged in the construction of homes for appellee Randall J. Tumlin and appellees Holly and James Kenneth Rose. As a result of these difficulties, Jordan was unable to complete either project, with the result that the appellees quit paying him and began paying his subcontractors directly. In each case, the total amount paid by the owner or owners to Jordan and his subcontractors exceeded the contract price for which Jordan had agreed to do the work.

In keeping track of Jordan's indebtedness for his purchases of building materials, the appellant maintained separate ledgers for his various projects. When it became apparent in late 1985 that Jordan was in financial distress, the appellant filed materialman's liens against the appellees' properties to secure payment of Jordan's indebtedness for the materials he had purchased for their homes. The appellant subsequently filed separate lawsuits against the appellees seeking to foreclose these liens, also seeking, in each case, a personal judgment against Jordan. The trial court consolidated the two actions and ultimately awarded summary judgment to the appellees based on the following findings and conclusions: "Affidavits of Jordan and the individuals indicate that they paid all necessary monies for materials used on their homes. Jordan's affidavit stating that the monies were received and forwarded to the [appellant supplier] by him allows for dissolution of the lien[s] pursuant to OCGA § 44-14-361."

In this appeal, the appellant contends that, contrary to the trial court's findings, the evidence of record did not establish without dispute that Jordan had paid for all the materials he had purchased for use in building the appellees' homes. The appellees, on the other hand, maintain that even if Jordan did not make sufficient payments to the appellant to pay for all of the materials he had purchased for their homes, the grant of summary judgment was nevertheless author-

ized on the basis of affidavits establishing that the combined amount of the payments they had made to Jordan and his subcontractors exceeded, in each case, the contract price for which Jordan had agreed to build their homes. *Held*:

1. "Where a contractor abandons his contract, 'the cost of completing the work is to be deducted from the contract price in order to ascertain the amount up to which the subcontractors may claim liens; and if such deductions, together with payments previously made to the contractor, equal or exceed the entire contract price, then of course the subcontractors and materialmen have no lien, since there is nothing due under the contract. . . .' [Cits.]" *E. Smith Heating &c. v. Biggers*, 139 Ga. App. 216 (1) (228 SE2d 203) (1976). See OCGA § 44-14-361.1 (e). *However*, "[t]o this statement of the law must be added a proviso that the owner is required to show that the sums paid to the contractor were properly appropriated to materialmen and laborers or that the contractor's statutory affidavit concerning such indebtedness had been obtained. (Cits.)" *Jones Mercantile Co. v. Lyn-Har, Inc.*, 245 Ga. 812, 813 (267 SE2d 251) (1980). "According to *Jones Mercantile*, it does not matter *what* the owner paid the contractor if he cannot prove what the contractor did with it. . . ." *Bishop v. Forsyth Paving Contractors*, 181 Ga. App. 345, 346 (352 SE2d 198) (1986). Accord *Adams v. W. P. Stephens Lumber Co.*, 158 Ga. App. 761 (282 SE2d 217) (1981).

Even assuming that the total amount the appellees paid to Jordan and his subcontractors exceeded the contract price for which Jordan had agreed to build their homes, the affidavits submitted by the appellees do not establish that the funds they paid to Jordan were "properly appropriated" by him to pay for the material and labor which went into their homes. In his affidavit, appellee Rose merely averred that he "was informed that all sums advanced by him to J. E. Jordan were in fact applied to the construction project contemplated in his contract with J. E. Jordan." Inasmuch as this averment demonstrates on its face that it is predicated on hearsay rather than personal knowledge, it has no evidentiary value. See generally OCGA § 9-11-56 (e). The only other affidavit bearing on the issue is that of Jordan, who averred that "all of the sums received by him on either the Rose or the Tumlin jobs were used solely in connection with accounts for each of the separate projects" and that "[n]o funds were commingled or used on other jobs." We do not consider the averment that the money was used "solely in connection with accounts for each of the separate projects" equivalent to a statement that all of the funds were paid to the materialmen and laborers involved in the two projects; and the statement that "no funds were commingled or used on other jobs" conflicts with Jordan's deposition testimony that he deposited the payments he received on his various projects into a single bank

account and that the funds drawn from that account on a given occasion "may not have come from one individual." See Division 2, infra. Consequently, we agree with the appellant that the affidavits were insufficient to establish their entitlement to summary judgment under the *Jones Mercantile* doctrine.

2. The appellees contend that the appellant forfeited its lien rights against their property by the manner in which it allocated at least two payments, one in the amount of $30,000 and the other in the amount of $20,000, which Jordan made on the accounts during July and August of 1985, immediately after having received identical payments from or on behalf of the appellees. While it is apparent without dispute from the ledger cards maintained by the appellant that some of this money was applied to the account indebtedness owing on the Rose project, it does not appear that any of the funds were applied to the indebtedness owing on the Tumlin project. The remaining funds were instead applied to other account indebtedness which Jordan owed the appellant for materials supplied to older projects which were no longer lienable.

"It has long been the law that '(w)hen a materialman is furnishing at the same time material to one contractor for the improvement of property belonging to different persons, and has full knowledge of the separate contracts, and money is paid to the materialman by the contractor from time to time on account of the material so furnished, *it is incumbent upon the materialman to keep separate accounts and to find out from the contractor on what contract the money is paid, and to what account it should be applied.* If he does not do so, but applies the money as a credit on a general account against the contractor, he thereby waives his right to a lien on the owner's property and must look alone to the contractor.' *Williams v. Willingham-Tift Lumber Co.*, 5 Ga. App. 533, 535 (63 SE 584) [1908] [Emphasis supplied.] This rule applies when the contractor has paid the materialman, with money received from the owner, an amount sufficient to pay in full the materialman for his materials installed in the owner's building. [Cit.]" *Apex Supply Co. v. Commercial Union Ins. Co*, 143 Ga. App. 131, 132 (237 SE2d 649) (1977).

The appellant's former controller testified that when Jordan would bring in a payment she would handle it as follows: "[H]e would ask, or I would tell him how I was going to apply it by looking at an aging report that we had. Like, if I had [an account] that's over 30 days, I would apply it to it first, you see, and say, is this okay, or whatever." She indicated that Jordan never voiced any objection to this procedure nor indicated that he wished for the payments to be allocated in a different manner. While Jordan did not deny that he had never voiced any objection to the manner in which his payments were allocated, he did deny that he had ever been invited to express

his preferences in this regard, testifying as follows: "They never asked me what job to put it on. They would break it down themselves mostly. They would put it on like they wanted."

"[T]he lien laws, being in derogation of the common law, are strictly construed against the lien claimant and in favor of the land-owner." *Ben Hill &c. Concrete Co. v. Prather,* 160 Ga. App. 149, 150 (1) (286 SE2d 481) (1981). Being cognizant that a landowner generally has no control over the manner in which a supplier allocates payments received from a building contractor, we hold that the supplier does not discharge its duty, under the *Apex Supply* case, "to find out from the contractor on what contract the money is paid, and to what account it should be applied" merely by informing the contractor how the money will be applied in the absence of direction to the contrary. Rather, the supplier must make a reasonable effort to ascertain the source from which the contractor received the funds and must apply the funds to that account. Otherwise, the supplier would, in effect, be empowered to use its existing lien rights to collect for materials supplied to properties on which its lien rights had long since expired.

Based on the foregoing, we hold that to the extent the appellant received payments from Jordan which were attributable to monies which had been paid to him on either the Rose project or the Tumlin project, the amount of the lienable indebtedness outstanding against the property in question was reduced, irrespective of how the appellant may have applied these payments among Jordan's various accounts. However, the record before us does not disclose to what extent Jordan's payments to the appellant were in fact attributable to funds he had received from the appellees. Consequently, it cannot be determined to what extent the lienable indebtedness outstanding against the appellees' properties has been extinguished, and we must conclude that the trial court erred in granting the appellees' motion for summary judgment.

3. The appellant's final enumeration of error is rendered moot by the foregoing.

*Judgment reversed. Sognier and Pope, JJ., concur.*

DECIDED MAY 23, 1989 —
REHEARING DENIED JUNE 5, 1989.

*George Pennebaker,* for appellant.
*James B. Talley, N. William Pettys, Jr., Joseph H. Fowler,* for appellees.